## AHRENS v. INTERNATIONAL–GREAT NORTHERN RAILROAD CO.*
### (No. 7713.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 23, 1927. Rehearing Denied March 23, 1927.)

1. **Damages** ⟜188(3)—**Jury's finding employee's injuries were not occasioned by fall from ladder held against preponderance of evidence.**

Where jury, in finding railroad employee's injuries were not received by fall from ladder onto pile of scrap iron while working on engine boiler, disregarded employee's testimony, which was sufficiently supported and corroborated, that he received injuries in fall, such finding was against preponderance of evidence, and warranted new trial.

2. **Appeal and error** ⟜233(1)—**Objection to charge held not prerequisite to complaint that jury's finding was against preponderance of evidence; objection properly being by motion for new trial.**

Objection to charge *held* not prerequisite to complaint that jury's finding railroad employee's injury was not received by fall from ladder while working on engine boiler was against preponderance of evidence; motion for new trial being proper objection.

### On Motion for Rehearing.

3. **Appeal and error** ⟜302(6)—**Complaint that finding of jury was contrary to preponderance of evidence in motion for new trial in assignment of error held sufficient to show challenge was to verdict.**

Complaint, in assignment of error of motion for new trial, that jury's finding that railroad employee did not receive injury by fall from ladder while working on engine boiler was contrary to preponderance of evidence, *held* sufficient to show challenge to verdict.

Appeal from District Court, Bexar County; O. M. Fitzhugh, Special Judge.

Action by Arthur G. Ahrens against the International-Great Northern Railroad Company. Judgment in favor of defendant, and plaintiff appeals. Reversed and remanded.

S. Engelking, of San Antonio, for appellant.

Davis & Eskridge and Arthur M. Green, all of San Antonio, for appellee.

COBBS, J. Appellant sued appellee to recover damages resulting from, or caused by, the negligence of the defendant in furnishing an unsafe and insecure ladder, with a helper to hold the ladder while plaintiff ascended it to do some work on a boiler. Plaintiff alleged that said helper released his hold on the ladder, and plaintiff was thrown to the floor while doing his work; that he fell on scraps of iron and other parts of an engine, which resulted in the fracture of a bone in his right foot.

The case was submitted to the jury on thirteen special issues, and the only issue about which any complaint is made is as to the first one; but that complaint is not made in respect to the form of the issue, for no objection was made to that at all, but the complaint is urged as to the answer and finding of fact of the jury in response thereto.

The issue submitted to the jury was:

"Did the plaintiff, in the fall complained of in his petition, receive any of the injuries alleged in said petition? Answer 'Yes' or 'No.'"

In response to that question the jury answered "No," and judgment was entered thereon for appellee. There was testimony of the appellant himself showing and describing the injury and how it occurred, and there is some corroboration of it.

The testimony elicited on the trial is very brief. Appellant was going up a ladder to the top of an engine boiler. His helper was told to hold the ladder, but he released it, causing appellant to fall on a pile of iron, and injure his right foot. "When I fell on the iron with my right foot I had an awful pain. I just caught my foot, and just started to twisting it around, I thought it was out of place, and I thought maybe I could get it back in place. I caught hold of it and twisted it every which way, I was sick at my stomach, and a cold sweat came out of my face. I was sick all over." Appellant thought he had a sprained ankle. The chief clerk sent him to Dr. Glasscock, the railroad physician, who pronounced it a sprain. He was treated accordingly for two months, without improvement. No X-ray was taken by the railroad or their doctor. Appellant then had Dr. Barron to X-ray his foot, and found that he had broken a bone in his foot.

Dr. Barron testified that he took an X-ray picture of appellant's right foot. This showed a fracture through the middle of the scaphoid bone. "The picture shows that absolutely there is a fracture there." "The break in this man's foot was about an inch long. The scaphoid bone is the key of the arch, the one that is broken in that foot."

Dr. Dinwiddie testified that callus around the fracture in the scaphoid bone of appellant's right foot could be distinctly felt and seen. He had also examined the X-ray picture of appellant's right foot. "There is a fracture of that scaphoid bone. The fracture being in the pivot bone of the foot, and a bone through which all the weight of the body must pass to the toes, it weakens the use of the foot." * * * "If you get half an inch fracture in the scaphoid bone it is necessarily serious." The physician pointed to a knot in appellant's foot "the size of a pecan, or a little larger, the end of an ordinary

pecan. It is that much larger than the other foot."

Mrs. Ahrens testified that the night after her husband's injury his foot swelled up just like a balloon.

Mr. Bennack, witness for appellee, testified that "the ladder fell right towards the front of the engine. Gover reached out and grabbed it. As I looked, Mr. Ahrens was lying on the floor." Appellant also testified that he called to see Dr. Taylor at his office only once, some 16 or 18 days after the accident.

Immediately after he filed suit Mr. Ahrens left town. He went up to Comfort in Kendall county, and there he did not attempt to see a doctor or make any effort whatsoever to have his foot treated. He remained on a ranch owned or controlled by his counsel's relatives up until the time of the trial. He drove backwards and forwards to various towns, including the 40 miles to San Antonio, to which point he came frequently, and on these trips he drove his Ford automobile.

The first proposition is:

"Although there may be sufficient evidence in a case to require the court to submit it to a jury, yet if the verdict rendered thereon is against the preponderance of the evidence to that degree which shows that manifest injustice has been done, the trial court may and should grant a new trial."

If there was no testimony to support appellant's contention, that finding would stand. However skimp such testimony may be to support an issue, the jury is not at liberty to entirely disregard it. While they are the judges of the weight and credibility of all witnesses and are authorized, too, to disregard the testimony of a witness, and not believe it, still they cannot arbitrarily and wholly disregard all testimony without excuse. There is testimony that corroborated the testimony of appellant himself, but we cannot compel a jury to believe or disbelieve any witness or testimony for that is their function. We have stated the strongest point in appellant's testimony claimed to support the contention.

Appellant relies upon two cases cited by him: Choate v. S. A. & A. P. Ry. Co., 90 Tex. 82, 37 S. W. 319, and National Life, etc., Co. v. Sanches (Tex. Civ. App.) 281 S. W. 891.

In the first-mentioned case the court says, first:

"The court is not justified in taking from the jury a question of fact except in case the evidence is such that there is no issue made for the jury to determine."

Second:

"Although there may be sufficient evidence in a case to require the court to submit it to the jury, yet if the verdict rendered thereon is against the preponderance of the evidence, to that degree which shows that manifest injustice has been done, the trial court may and should grant a new trial. The judge should not invade the province of the jury, and take from it the decision of a question which properly belongs to it. Neither should he abdicate the functions of his office, and permit the prerogatives of the jury to be perverted to the accomplishment of wrong. Upon a careful re-examination of this case, we have concluded that there was error in the former judgment of this court, in so far as we held that there was no evidence upon which to submit the issue of negligence to a jury. We think that the evidence is not such as to preclude a difference of opinion upon the question of negligence on the part of the defendant, and that the Court of Civil Appeals erred in the direction that it gave to the trial court as above stated."

[1] But here the issue went to the jury. The verdict was not instructed. Appellant made no objection to this issue being given to the jury, evidently because he was satisfied with it, and does not now complain of it as fundamental error, for that is not apparent on the face of the charge, but the claimed error is based upon the claim that the testimony preponderated in favor of appellant to such an extent that the court should have set aside the verdict and should have granted a new trial; in other words, that the jury's verdict was against the great preponderance of the testimony.

It is inconceivable to us to understand the finding of the jury that the man was not injured, however slightly it may have been in the light of the testimony.

Appellant's testimony was entirely disregarded. As shown, it was sufficiently supported and corroborated to the effect, at least, that he received injuries in the fall as alleged in his petition, and the finding was clearly against the preponderance of the evidence.

[2] In this case it was not required that appellant should have objected to the charge before he could raise the question that the verdict was against the preponderance of the evidence. He could have no objection, as a matter of course, to the issue itself submitted, but his complaint was against the answer of the jury, which was against the preponderance of the direct testimony offered by appellant that he was injured in the fall, and that objection is presented in the only practical way it could have been—by a motion to the trial judge for a new trial.

As practitioners at the bar and as appellate judges we have learned to respect verdicts of jurors generally, and affirm them when possible, but cases arise where we cannot always do that, especially where trial courts fail or refuse to set them aside in proper cases. In passing upon them we give great weight to the judgment of such court upon questions arising, presented in motions for new trial, because trial judges have such an excellent advantage in seeing the witnesses testify, their manner, etc. But as long as the rule prevails as presented in the Choate Case, su-

pra, it stands as a beacon light for our guidance, and requires us in certain cases to set aside verdicts of juries, based upon the reasons given.

We think this case must be governed by that rule. We sustain the assignments of error presented, and reverse the judgment and remand the case for another trial.

### On Motion for Rehearing.

We have read and carefully considered the well-prepared and interesting motion of appellee for a rehearing. The only issue passed upon by the jury was whether or not "plaintiff, in the fall complained of in his petition, received any of the injuries alleged in said petition," and the jury answered "No." That he did receive a fall and did receive injuries therefrom is not only shown by the preponderance of the evidence but by the almost undisputed facts.

The motion for new trial, filed by plaintiff in the court below, is very short, terse, and direct to the issue involved in respect to the injury, saying:

"Comes now the plaintiff, A. G. Ahrens, that the verdict herein returned by the jury on May 6, 1926, is contrary to the law and the evidence.

"He further shows that the overwhelming weight of the testimony was to the effect that the plaintiff had a fall from a ladder at the shops of the defendant, and then and there sustained injuries to his right foot, to wit, a fracture of the scaphoid bone, and in connection therewith injuries to the tendons, nerves, and ligaments of said foot. This testimony came from the mouths of plaintiff's witnesses only, and it was in no way denied or shaken by any proof whatever from the defendant. Plaintiff says that said testimony was wholly uncontradicted and undisputed. And said jury either in some error or in some manner at this time unaccountable to the plaintiff disregarded said testimony, and found that the plaintiff was not injured at the time of his fall.

"Said verdict and the judgment based thereon are contrary to the law."

[3] The sole complaint made against the finding of the jury that there was no injury is raised in the said motion for new trial sufficient to assign error, which was done in the following language:

### "Plaintiff's Assignment of Error.

"The court erred in overruling plaintiff's motion for a new trial, because the verdict of the jury to the effect that plaintiff was not injured was contrary to the overwhelming preponderance of the evidence, as shown in paragraph 2 of plaintiff's motion for new trial."

This was filed in the district court on the 22d day of September, 1926, and incorporated in this record, which was altogether within the rights of appellant, and properly done, and must be considered by us in compliance with the rules of the court in such cases made and provided.

The motion for new trial sufficiently called to the court the challenge that it, the verdict, was "contrary to the evidence," and that "it was against the overwhelming weight of the testimony * * * to the effect that the plaintiff had a fall from a ladder at the shops of the defendant, and then and there sustained injuries to his right foot, to wit, a fracture of the scaphoid bone, and in connection therewith injuries to the tendons, nerves, and ligaments of said foot." ·

In the face of the testimony showing appellant was injured, and however inclined we always are to affirm judgments, the overwhelming and almost undisputed testimony, call it preponderance if you will, it is our duty to reverse the judgment in this case and remand it for another trial.

The motion for a rehearing is accordingly overruled.